AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Black Apple iPhone | ) |
| Seized as FP&F No. 2022565300003301 Line Item 0003 | ) |
| ("Target Device") | ) |

Case No.  '22  MJ3815

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U. S. C. § 1324 | Alien Smuggling |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Giancarlo Lugo, incorporated herein by reference.

☑ Continued on the attached sheet.

❒ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Giancarlo Lugo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date:  ___10/18/2022___

_____
*Judge's signature*

City and state:  San Diego, California

HON. Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.     I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> Black Apple iPhone
> Seized as FP&F No. 2023565300003301 Item 0003
> **("Target Device")**

The **Target Device**, as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.     The requested warrants related to the investigation and prosecution of Alexander WEIR for attempting to transport and move illegal aliens within the United States. The **Target Device** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3.     The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents.  This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter.   Dates and times are approximate.

**TRAINING AND EXPERIENCE**

4.     I have been employed by the USBP since 2009 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of

1

Criminal Procedure and have been a Federal Law Enforcement Officer for fourteen years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5.     My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6.     During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit,

2

1  providing instructions to transporters, guiding aliens to specific pick up locations, warning

2  accomplices about law enforcement activity in the area and the status of check-point

3  operations, and communicating with co-conspirators who guide aliens, coordinate drop off

locations, and/or operate alien stash houses.

4        8.    The smuggling of aliens generates many types of evidence, including, but not

5  limited to, cellular phone-related evidence such as voicemail messages referring to the

arrangements of travel, names, photographs, text messaging (via SMS or other

6  applications), and phone numbers of co-conspirators and illegal aliens.  For example,

7  drivers and passengers responsible for transporting illegal aliens are typically in telephonic

8  contact with co-conspirators immediately prior to and/or following the crossing of the

illegal aliens at the border, at which time they receive instructions, including where to pick-

9  up the illegal aliens for transportation into the United States and where to take the illegal

10  aliens after crossing into the United States.  These communications may also include

11  locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in

telephonic contact with co-conspirators prior to and following their crossing in order to

12  make smuggling arrangements, receive instructions, and report their locations after

13  crossing.  It is common for alien smugglers to be in contact with co-conspirators weeks to

14  months in advance of an event to recruit drivers and to coordinate the event. It is also

common for co-conspirators to continue to contact each other by phone calls, social media,

15  or messaging applications when contact is lost with the driver after an apprehension has

16  occurred.

17        9.    Based upon my training, experience, and consultations with law enforcement

officers experienced in narcotics trafficking investigations, and all the facts and opinions

18  set forth in this affidavit, I know that cellular telephones (including their Subscriber

19  Identity Module (SIM) card(s)) can and often do contain electronic evidence, including,

for example, phone logs and contacts, voice and text communications, and data, such as

20  emails, text messages, chats and chat logs from various third-party applications,

21                                          3

1 photographs, audio files, videos, and location data.  In particular, in my experience and
2 consultation with law enforcement officers experienced in alien smuggling investigations,
3 I am aware that individuals engaged in alien smuggling may store photos and videos on
their cell phones that reflect or show co-conspirators and associates engaged in alien
4 smuggling, as well as images and videos with geo-location data identifying alien smuggling
5 transportation routes, and communications to and from recruiters and organizers.

6       10.    This information can be stored within disks, memory cards, deleted data,
remnant data, slack space, and temporary or permanent files contained on or in the cellular
7 telephone. Specifically, searches of cellular telephones may yield evidence:

8         a.  tending to indicate efforts to smuggle aliens from Mexico into the United
9              States, and transport aliens inside the United States;

        b.  tending to identify accounts, facilities, storage devices, and/or services—
10              such as email addresses, IP addresses, and phone numbers—used to
11              facilitate alien smuggling and transportation of smuggled aliens;

12         c.  tending to identify co-conspirators, criminal associates, or others involved
             in alien smuggling, or transportation of smuggled aliens;

13         d.  tending to identify travel to or presence at locations involved in the
14              smuggling, transportation, or harboring of illegal aliens, such as stash
             houses, load houses, or delivery points;

15         e.  tending to identify the user of, or persons with control over or access to,
16              the Target Device(s); and/or

17         f.  tending to place in context, identify the creator or recipient of, or establish
             the time of creation or receipt of communications, records, or data involved
18              in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

19       11.    On October 14, 2022, Border Patrol Agents J. Bailey, A. Feldenzer, C.
20 Hatala, V. Pirro, A. Feldenzer and Immigration and Customs Enforcement Officer J.
21 Shroyer were performing assigned duties in the Chula Vista Border Patrol Station's area

4

of responsibility. Agents Bailey, Hatala, Pirro, and Hurlbut were dressed in plain civilian clothes, wearing their Border Patrol issued outer body armor with a badge and insignia visible. Agents Feldenzer and Pirro were wearing their Border Patrol issued uniform with a badge and insignia visible.

12.     At approximately 10:04 AM, Officer Shroyer observed a light green Mazda sedan stop on Otay Lakes Road and an individual ran from the brush and get into the Mazda. Officer Shroyer followed the Mazda and observed the Mazda make a U-turn and begin traveling east on Otay Lakes Road. Border Patrol Agent-Intelligence C. Hatala observed the Mazda pass his location at a high rate of speed. Agent Hatala pulled behind Officer Shroyer and began to follow the Mazda east. Officer Shroyer and Agent Hatala were following the Mazda, a Customs and Border Protection Air and Marine helicopter conducted air support "Troy". Agent V. Pirro notified agents he was setting up a Vehicle Immobilization Device (VID).

13.     The Mazda pulled into the Thousand Trails Campground and abruptly stopped and Officer Shroyer observed one individual, later identified as material witness Adolfo Angel PARRA-Sanchez, exit the Mazda and attempt to run away. The Mazda then accelerated, traveling east on Otay Lakes Road. Officer Shroyer was able to detain PARRA. Officer Shroyer identified himself as an Immigration and Customs Enforcement Agent and conducted an immigration inspection. PARRA stated he is a citizen of Mexico without any immigration documents allowing him to enter or remain in the United States legally. At approximately 10:09 AM, Officer Shroyer placed PARRA under arrest.

14.     Agent Hatala then observed the Mazda slow down ahead of him and pull off at an area known to Border Patrol Agents as, "East Thousand Trails." Agent Hatala pulled behind the Mazda and activated his agency vehicle's emergency equipment to conduct a vehicle stop. The Mazda then pulled back onto Otay Lakes Road eastbound and fled at a high rate of speed. Agent Hatala immediately turned off his emergency lights and siren, slowed down and followed the Mazda. Once the Mazda reached the intersection of Otay

5

Lakes Road and SR-94, Agent Pirro deployed the VID, the Mazda swerved around them by going into the oncoming westbound lane. The driver, then went around Agent Pirro's vehicle, into the dirt shoulder of the road and turned west on SR-94 at a high rate of speed.

15.    Agent Feldenzer set up an additional VID near the intersection of SR-94 and Honey Springs Road. Once the Mazda reached SR-94 and Honey Springs Road, Agent Feldenzer was able to successfully deploy a VID. Troy relayed that the Mazda was constantly passing civilian traffic by traveling into oncoming traffic and passing vehicles on blind curves. Troy observed the Mazda stop on the side of SR-94 and the driver exit the Mazda and run on-foot. Acting Supervisory Border Patrol Agent B. Hurlbut and Agent Bailey arrived, chased to the driver, and caught up to him. The driver was later identified as the defendant, Alexander WEIR. Agents Bailey and Hurlbut escorted WEIR back to the Mazda, and Officer Shroyer notified Agent Hurlbut that PARRA was an illegal alien. At approximately 10:15 AM, Agent Hurlbut placed WEIR under arrest.

16.    At the time of WEIR's arrest, a Black Apple iPhone (**Target Device**), was recovered under WEIR's person while WEIR was on the ground. The **Target Device** was subsequently seized. WEIR stated that the **Target Device** belongs to his girlfriend, even though it was in WEIR's possession and WEIR's girlfriend was not in the vehicle during this event.

17.    The defendant WEIR was read his Miranda rights. WEIR stated he understood his rights and was willing to speak without an attorney present. WEIR stated that he lives with girlfriend, mother, and son in Spring Valley, California. WEIR stated that he was working at the Crestwood state facility but was fired. WEIR stated approximately four months ago he met a man at a club in downtown San Diego, who told him he could make money picking people up and dropping them off in San Diego. WEIR stated that the man called him today with a job to pick up people. WEIR stated he was going to be paid, but didn't know how much. WEIR stated he was told by the man to download WhatsApp and to share his location. WEIR stated he was having trouble with WhatsApp and used his

girlfriend's phone in today's smuggling event. WEIR stated the man sent him the location for the pickup through WhatsApp. WEIR stated that he picked up one individual and he told WEIR to go. WEIR stated this was his first time attempting to pick people up for this man. WEIR stated he was going approximately 80 to 85 miles per hour and that he did not see the emergency lights nor hear the sirens. WEIR stated he did not see the first attempt to spike his vehicle but did see the second attempt. WEIR stated that he was driving fast because he was scared. WEIR stated once his vehicle was disabled, he got out and ran away.

18.     PARRA stated he is a citizen of Mexico without any immigration documents allowing him to enter or remain in the United States legally. PARRA stated smuggling arrangements were made prior to entering the United States. PARRA stated he was going to pay approximately $10,000 USD if successfully smuggled into the United States. PARRA stated the foot guide he was traveling with advised him to get into a blue 4-door vehicle. PARRA stated the foot guide told him to wait in the brush next to the highway near an abandoned trailer. PARRA stated once the blue vehicle arrived, he opened the front passenger door and sat next to the driver. PARRA described the driver as being a African American male who was clean shaved and had big hair. PARRA stated he and the driver observed Border Patrol Agents attempting to pull them over. PARRA stated the driver told him something in English as they were pulling over, but he was unable to understand. PARRA stated the driver also used his hands to wave and point towards toward the side of the road. PARRA stated he got out of the vehicle and the driver sped off.

19.     Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using

the **Target Device** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on **September 14, 2022, through October 14, 2022**.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

8

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

22. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

23. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

### CONCLUSION

24. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of an alien smuggling violation of Title 8, United States Code, Section 1324.

25. Because the **Target Device** was seized at the time of WEIR's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from **September 14, 2022, through October 14, 2022.**

26.     Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A, seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Giancarlo Lugo
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 18th day of October 2022.

HON. KAREN S. CRAWFORD
United States Magistrate Judge

1

## **ATTACHMENT A**

2

PROPERTY TO BE SEARCHED

3

The following property is to be searched:

4
Black Apple iPhone
Seized as FP&F No. 2023565300003301 Item 0003
5
**("Target Device")**

6

Target Device is currently in the custody of the Department of Homeland Security,
7
Customs and Border Protection, United States Border Patrol, San Diego Sector.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

11

**ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below.  The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **September 14, 2022, through October 14, 2022**:

a.   tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.   tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.   tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above, which are evidence of violations of Title 8, United States Code, Section 1324.